NO. COA13-263

NORTH CAROLINA COURT OF APPEALS

Filed: 7 January 2014

EMBARK, LLC and DAVID B. WHEELER,
          Plaintiffs,

     v.                                    Mitchell County
                                           No. 12 CVS 49
1105 MEDIA, INC.,
          Defendant.


     Appeal by defendant from order entered 17 October 2012 by Judge C. Philip Ginn in Mitchell County Superior Court.  Heard in the Court of Appeals 28 August 2013.


     *Adams, Hendon, Carson, Crow and Saenger, P.A., by Robert C. Carpenter, for plaintiffs-appellees.*

     *Van Winkle, Buck, Wall, Starnes & Davis, P.A., by Heather Whitaker Goldstein, Larry McDevitt and David M. Wilkerson, for defendant-appellant.*


     GEER, Judge.


     Defendant 1105 Media, Inc. appeals from an order (1) denying its motion to dismiss for lack of personal jurisdiction as to plaintiff David B. Wheeler's claims and (2) deferring ruling on its motion to dismiss as to plaintiff Embark, LLC's claims. Because the trial court's unchallenged findings of fact support its conclusion that (1) the exercise of personal jurisdiction satisfies the requirements of our State's long arm statute, N.C.

Gen. Stat. § 1-75.4 (2011), and (2) 1105 Media had sufficient minimum contacts with the State to satisfy the requirements of due process, we affirm the trial court's order as to Wheeler's claims. We further hold that the trial court did not abuse its discretion in deferring any ruling as to Embark's claims pending additional discovery.

## Facts

Plaintiff Wheeler is the president, founder, and sole employee of plaintiff Embark, an event planning company organized in Illinois on 25 September 2007. Defendant 1105 Media is a Delaware corporation with its principal place of business in California. Neal Vitale is the president and Chief Executive Officer of 1105 Media. David Myers is the Vice President of Event Operations at 1105 Media.

On 29 March 2011, Wheeler, Embark, and 1105 Media entered into a contract as a result of which Embark became a division of 1105 Media and Wheeler became an employee of 1105 Media and the head of "Embark Events, a division of 1105 Media." The contract became effective 1 April 2011 and was terminable by either party after 1 January 2012 with 12 months notice. 1105 Media terminated the contract on 31 August 2011 without providing Wheeler or Embark any reason for the termination and refused to pay Wheeler's salary or other benefits after 31 August 2011.

Wheeler and Embark filed an action for breach of contract against 1105 Media on 9 March 2012 in Mitchell County Superior Court. 1105 Media moved to dismiss for lack of personal jurisdiction on 30 April 2012. On 17 October 2012, the trial court entered an order denying 1105 Media's motion to dismiss as to the claims of Wheeler, but withheld ruling on the motion to dismiss as to the claims of Embark.

In support of its decision, the trial court made the following findings of fact. Wheeler, the president and founder of Embark, was a resident of Mitchell County, North Carolina, and had been since August 2010. 1105 Media was at all relevant times a Delaware corporation with its principal place of business in California.

Prior to entering into a contract with 1105 Media, Wheeler, on multiple occasions, told Mr. Vitale, Mr. Myers, and other 1105 Media employees that he lived in and operated Embark from North Carolina. He also provided 1105 Media with Embark business cards that listed Embark's North Carolina address.

The contract between Wheeler, Embark, and 1105 Media was negotiated via email and telephone communications, and Wheeler wrote many of the emails and placed most of the telephone calls from North Carolina. Although Wheeler invited Mr. Myers and Mr. Vitale to North Carolina on several occasions, no officers or agents of 1105 Media ever came to North Carolina to meet with

Wheeler or for any other purpose related to the contract. The contract was signed by the parties in Washington, D.C.

The contract was an employment contract between Wheeler and 1105 Media. The trial court found that it was unclear how the contract affected Embark, but, at Mr. Vitale's suggestion, Embark operated as a division of 1105 Media headed by Wheeler. The name of the division, coined by Mr. Myers, was "Embark Events, a Division of 1105 Media, Inc."

During his employment with 1105 Media, Wheeler lived and worked in Mitchell County, North Carolina, where he performed 75% of his duties for 1105 Media. All of his travel originated from North Carolina, and he did not perform any of his duties for 1105 Media at any of their other offices. He maintained an office and home phone number with a North Carolina area code, paid income and property taxes in North Carolina, and maintained a personal North Carolina checking and savings account. He received health care in North Carolina that was covered by 1105 Media's health insurance plan.

1105 Media paid for the rent and telephone bill for Wheeler's office in Mitchell County, and, at Wheeler's request, shipped his work computer to the North Carolina office. 1105 Media paid a monthly allowance of $450.00 for Wheeler's car, which was titled in North Carolina. 1105 Media directly deposited Wheeler's

paycheck into his North Carolina checking account, paid North Carolina payroll taxes, and had an "employer account number" with the North Carolina Employment Security Commission. No one at 1105 Media ever brought up any concerns about Wheeler living and working in North Carolina.

1105 Media marketed Embark Events and Wheeler as part of the 1105 Media brand and operation. It created specific 1105 Media thank you cards for Wheeler that he sent to 1105 Media clients. The cards contained Wheeler's name, the Embark Events logo, and listed the company name as "Embark Events, a division of 1105 Media, Inc." The only address on the card was the North Carolina office address.

Based on its findings, the trial court concluded that North Carolina had jurisdiction over Wheeler's claims against 1105 Media pursuant to North Carolina's Long Arm Statute, N.C. Gen. Stat. § 1-75.4(5), and that 1105 Media had sufficient minimum contacts with North Carolina such that it had purposefully availed itself of the jurisdiction of North Carolina.

The trial court also concluded that it was unclear whether the court had jurisdiction over 1105 Media with respect to Embark's claims. The order, therefore, denied 1105 Media's motion to dismiss as to Wheeler's claims, but withheld ruling as to Embark's

claims until the parties completed discovery.  1105 Media appealed the order to this Court.[1]

I

"In order to determine whether North Carolina courts have personal jurisdiction over a nonresident defendant, a court must apply a two-step analysis: 'First, the transaction must fall within the language of the State's "long-arm" statute.  Second, the exercise of jurisdiction must not violate the due process clause of the fourteenth amendment to the United States Constitution.'" *Wells Fargo Bank, N.A. v. Affiliated FM Ins. Co.*, 193 N.C. App. 35, 39, 666 S.E.2d 774, 777 (2008) (quoting *Tom Togs, Inc. v. Ben Elias Indus. Corp.*, 318 N.C. 361, 364, 348 S.E.2d 782, 785 (1986)).

"The standard of review to be applied by a trial court in deciding a motion under Rule 12(b)(2) depends upon the procedural context confronting the court." *Banc of Am. Secs. LLC v. Evergreen Int'l Aviation, Inc.*, 169 N.C. App. 690, 693, 611 S.E.2d 179, 182 (2005).  When, as here, both the defendant and the plaintiff submit affidavits addressing personal jurisdiction issues, "'the court

---

[1]Although the order denying 1105 Media's motion to dismiss is interlocutory, this Court has jurisdiction over the appeal pursuant to N.C. Gen. Stat. § 1-277 (2011) because 1105 Media argued that it lacked minimum contacts with North Carolina.  *See Love v. Moore*, 305 N.C. 575, 581, 291 S.E.2d 141, 146 (1982) ("[T]he right of immediate appeal of an adverse ruling as to jurisdiction over the person, under [N.C. Gen. Stat. § 1-277(b)], is limited to rulings on 'minimum contacts' questions, the subject matter of Rule 12(b)(2).")

may hear the matter on affidavits presented by the respective parties, . . . [or] the court may direct that the matter be heard wholly or partly on oral testimony or depositions.'" *Id.* at 694, 611 S.E.2d at 183 (quoting N.C.R. Civ. P. 43(e)). "If the trial court chooses to decide the motion based on affidavits, '[t]he trial judge must determine the weight and sufficiency of the evidence [presented in the affidavits] much as a juror.'" *Id.* (quoting *Fungaroli v. Fungaroli*, 51 N.C. App. 363, 367, 276 S.E.2d 521, 524 (1981)).

The standard of review for this Court is "'whether the findings of fact by the trial court are supported by competent evidence in the record[.]'" *Miller v. Szilagyi*, ___ N.C. App. ___, ___, 726 S.E.2d 873, 877 (2012) (quoting *Bell v. Mozley*, ___ N.C. App. ___, ___, 716 S.E.2d 868, 871 (2011), *disc. review denied*, 365 N.C. 574, 724 S.E.2d 529 (2012)). Here, neither party challenges the sufficiency of the evidence to support the trial court's findings of fact, and therefore, they are "'presumed to be supported by competent evidence and [are] binding on appeal.'" *Id.* at ___, 726 S.E.2d at 877 (quoting *Bell*, ___ N.C. App. at ___, 716 S.E.2d at 871).

A.   Long Arm Statute

1105 Media first argues that the trial court erred in concluding that jurisdiction was proper pursuant to North

Carolina's Long Arm Statute, N.C. Gen. Stat. § 1-75.4(5), which states, in relevant part, that jurisdiction is proper in any action which:

> a. Arises out of a promise, made anywhere to the plaintiff or to some third party for the plaintiff's benefit, by the defendant to perform services within this State or to pay for services to be performed in this State by the plaintiff; or

> b. Arises out of services actually performed for the plaintiff by the defendant within this State, or services actually performed for the defendant by the plaintiff within this State if such performance within this State was authorized or ratified by the defendant; or

> c. Arises out of a promise, made anywhere to the plaintiff or to some third party for the plaintiff's benefit, by the defendant to deliver or receive within this State, or to ship from this State goods, documents of title, or other things of value; . . .

1105 Media argues that the requirements of N.C. Gen. Stat. § 1-75.4(5)(b) were not met because that section requires that any services actually performed in North Carolina be "authorized or ratified by the defendant." According to 1105 Media, since the trial court made no findings as to whether 1105 Media authorized or ratified Wheeler's performance in North Carolina, the trial court's conclusion is not supported by its findings of fact.

However, based on our review of the order, the trial court did make sufficient findings supporting the conclusion that Wheeler's performance was "authorized or ratified." The court found that 1105 Media paid for Wheeler's North Carolina office space, directly deposited Wheeler's paycheck into his North Carolina checking account, paid North Carolina payroll taxes, never brought up any concerns about Wheeler living and working in North Carolina, created specific 1105 Media thank you cards with Wheeler's North Carolina address for him to send to 1105 Media clients, paid the telephone bill for Wheeler's North Carolina office, and shipped a computer to his office. These findings are more than enough to support the conclusion that Wheeler's performance of services in North Carolina for 1105 Media was authorized and ratified by 1105 Media.

In any event, although 1105 Media does not address N.C. Gen. Stat. § 1-75.4(5)(a) or (c), the trial court's findings of fact also establish that the requirements for those subsections of the statute are satisfied. As provided in N.C. Gen. Stat. § 1-75.4(5)(a), 1105 Media promised to pay Wheeler for the services Wheeler was to perform under his employment contract in North Carolina. Likewise, N.C. Gen. Stat. § 1-75.4(5)(c) is met by the trial court's finding that 1105 Media shipped to Wheeler's North Carolina office a work computer and directly deposited Wheeler's

salary into his North Carolina bank account. Both the computer and paychecks are "things of value." N.C. Gen. Stat. § 1-75.4(5)(c). *See Lab. Corp. of Am. Holdings v. Caccuro*, 212 N.C. App. 564, 567, 712 S.E.2d 696, 700 (finding payments sent from employer to employee during employment relationship constituted "thing of value" for purposes of long arm statute), *appeal dismissed and disc. review denied*, 365 N.C. 367, 719 S.E.2d 623 (2011).

The trial court, therefore, properly concluded that jurisdiction existed under North Carolina's long arm statute.

B.   Minimum Contacts

Under the Due Process Clause, a court may exercise personal jurisdiction over a non-resident defendant only if there exists "sufficient 'minimum contacts' between the nonresident defendant and our state 'such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Skinner v. Preferred Credit*, 361 N.C. 114, 122, 638 S.E.2d 203, 210 (2006) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 90 L. Ed. 95, 102, 66 S. Ct. 154, 158 (1945)). More specifically, "[i]n each case, there must be some act by which the defendant purposefully avails himself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws; the unilateral activity

within the forum state of others who claim some relationship with a non-resident defendant will not suffice." *Tom Togs*, 318 N.C. at 365, 348 S.E.2d at 786. Instead, the "relationship between the defendant and the forum must be 'such that he should reasonably anticipate being haled into court there.'" *Id.* (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 62 L. Ed. 2d 490, 501, 100 S. Ct. 559, 567 (1980)).

"There are two types of personal jurisdiction. General jurisdiction exists when the defendant's contacts with the state are not related to the cause of action but the defendant's activities in the forum are sufficiently 'continuous and systematic.' Specific jurisdiction exists when the cause of action arises from or is related to defendant's contacts with the forum." *Skinner*, 361 N.C. at 122, 638 S.E.2d at 210 (internal citation omitted). Here, the trial court denied the motion to dismiss as to Wheeler's claims based on specific jurisdiction.

For specific jurisdiction, the focus is on "the relationship among the defendant, this State, and the cause of action." *Tom Togs*, 318 N.C. at 366, 348 S.E.2d at 786. In determining whether minimum contacts exist, our courts examine several factors: "'(1) the quantity of the contacts; (2) the quality and nature of the contacts; (3) the source and connection of the cause of action to the contacts; (4) the interests of the forum state, and (5) the

convenience to the parties.'" *Cambridge Homes of N.C. Ltd. P'ship v. Hyundai Constr., Inc.*, 194 N.C. App. 407, 412-13, 670 S.E.2d 290, 295-96 (2008) (quoting *Cooper v. Shealy*, 140 N.C. App. 729, 734, 537 S.E.2d 854, 857-58 (2000)). "'A contract alone may establish the necessary minimum contacts where it is shown that the contract was voluntarily entered into and has a 'substantial connection' with this State.'" *Banc of Am. Secs.*, 169 N.C. App. at 696, 611 S.E.2d at 184 (quoting *Williamson Produce, Inc. v. Satcher*, 122 N.C. App. 589, 594, 471 S.E.2d 96, 99 (1996)).

In *Better Bus. Forms, Inc. v. Davis*, 120 N.C. App. 498, 499, 462 S.E.2d 832, 833 (1995), this Court held that there was personal jurisdiction over non-resident defendants for breach of a contract to purchase a North Carolina business. The plaintiff in *Better Business* was a "Florida corporation with an office and place of business in Forsyth County, North Carolina." *Id.* It sold an operating division of its company, which had sales offices in Winston-Salem, North Carolina and Roanoke, Virginia, to a Virginia corporation owned by the defendants. *Id.* After the merger, the North Carolina sales office "continued to do all of the administrative work necessary to service the Winston-Salem operation," and generated half of the company's sales. *Id.* at 501, 462 S.E.2d at 834.

In its due process analysis, this Court noted that the "active negotiations to purchase a North Carolina business, some of which were conducted in North Carolina, demonstrate a purposeful attempt by defendants to avail themselves of the privilege of conducting business in this State." *Id.* at 500, 462 S.E.2d at 834. The Court found it insignificant that one of the individual defendants had never stepped foot in North Carolina or personally conducted or managed any of the North Carolina activities, concluding instead that "jurisdiction here is based on the benefits received by defendants from the underlying contract which has a substantial connection with North Carolina." *Id.* at 501, 462 S.E.2d at 834.

We believe that the facts here parallel those in *Better Business*. The trial court's findings show that 1105 Media voluntarily entered into a contract whereby it created a division of its company that had an office and head of operations in North Carolina. 1105 Media negotiated the contract knowing that Wheeler was a resident of North Carolina and that Embark was operated out of North Carolina.[2] 1105 Media's proposal to make Embark a division of 1105 Media and hire Wheeler to head the division "demonstrate[s]

---

[2]Defendant argues that the trial court made no findings as to 1105 Media's knowledge that Wheeler resided in and operated Embark from North Carolina. We disagree. The trial court's finding of fact that Wheeler told 1105 Media's officers that he lived in North Carolina and operated Embark from this State is a sufficient finding regarding 1105 Media's knowledge of those facts.

a purposeful attempt by [1105 Media] to avail [itself] of the privilege of conducting business in this State."  *Id.* at 500, 462 S.E.2d at 834.

Additionally, 1105 Media's performance during the course of the contract further demonstrates that the contract at issue in this case is materially indistinguishable from the one in *Better Business* that this Court concluded had a substantial connection with North Carolina.  1105 Media treated the North Carolina operation as part of itself: it paid for the North Carolina office rent and telephone and created 1105 Media thank you cards for Wheeler to send to 1105 Media clients that identified "Embark Events, a Division of 1105 Media, Inc." as having a North Carolina address.  As in *Better Business*, "jurisdiction here is based on the benefits received by defendants from the underlying contract which has a substantial connection with North Carolina."  *Id.* at 501, 462 S.E.2d at 834.

Defendant attempts to distinguish *Better Business* on the bases that (1) Embark was incorporated in Illinois and not North Carolina; (2) no events were produced, performed, or contemplated in North Carolina; and (3) no significant revenue was generated from any operations of Embark Events.  None of these purported distinctions is material.

*Better Business* focused not on the purchased business' state of incorporation, but rather on the location of its offices and where it did business. *Id.* at 500-01, 462 S.E.2d at 834. In this case, after entering into the contract with Wheeler and Embark, 1105 Media established a division office in North Carolina and 75% of Wheeler's services for 1105 Media were performed in North Carolina. *Compare id.* ("After the purchase, Graphics Supply's Winston-Salem office continued to do all of the administrative work necessary to service the Winston-Salem operation, including purchasing, shipping, bookkeeping, accounting, and accounts receivable."). Where the events Wheeler arranged for Embark actually took place -- as opposed to where Wheeler's services were rendered -- is no more material than where the *Better Business* clients were located or where their products where shipped.

Finally, although the Court noted in *Better Business* that the defendants did financially benefit from the Winston-Salem office, *id.* at 501, 462 S.E.2d at 834, the Court did not hold that a generation of revenues was necessary. The focus was on "the benefits received by defendants from the underlying contract." *Id.* Here, those benefits were Wheeler's services, 75% of which were rendered in North Carolina. Accordingly, under *Better Business*, the trial court properly concluded that 1105 Media had sufficient minimum contacts with respect to Wheeler's claims. *See*

*also Brickman v. Codella*, 83 N.C. App. 377, 384, 350 S.E.2d 164, 168 (1986) (finding personal jurisdiction over non-resident defendant where defendant's contacts with State "were 'purposefully directed' toward [plaintiff] in order to obtain his financial assistance with a new business venture whereby [defendant] *sought* personal commercial benefit" (emphasis added)).

Moreover, where the cause of action is a breach of contract, the substantial performance of the contract by the plaintiff in the forum state with the defendant's knowledge, permission, or endorsement is a factor weighing in favor of a finding of specific jurisdiction over the defendant. Here, 1105 Media employed Wheeler as the head of a division of its company and marketed Wheeler and Embark as part of the 1105 Media brand and operation. With 1105 Media's knowledge and, therefore, its permission, Wheeler performed 75% of his duties under the contract from North Carolina. *See Chapman v. Janko, U.S.A., Inc.*, 120 N.C. App. 371, 373, 462 S.E.2d 534, 536 (1995) (finding jurisdiction over non-resident, non-domesticated corporation in action for breach of contract for consultation services by resident plaintiff where plaintiff performed substantial services for corporation in North Carolina and corporation listed plaintiff as a "'U.S.A. sales rep'" on its own letterhead, even though employer had no employees residing in North Carolina, only contacted plaintiff through telephone,

letter, or outside North Carolina, and contacts involved negotiations only); *Dataflow Cos. v. Hutto*, 114 N.C. App. 209, 213, 441 S.E.2d 580, 582-83 (1994) (finding personal jurisdiction over out-of-state defendants for breach of contract where supplies were shipped to defendants from plaintiff's North Carolina office, plaintiff spent considerable time engineering and designing computer system in North Carolina, and defendants sent payments to North Carolina office).

However, 1105 Media vigorously argues that Wheeler was simply a telecommuting employee and that this Court should adopt the reasoning of other courts that have held that when a telecommuting employee brings suit against his out-of-state employer in an action related to the employment relationship, the employer's withholding of state payroll taxes and payment of unemployment insurance to the forum state, alone, is not enough to establish purposeful availment or minimum contacts with that state. In support of this argument, defendant cites *Slepian v. Guerin*, 172 F.3d 58, 1999 WL 109676, 1999 U.S. App. LEXIS 3371 (9th Cir. Mar. 1, 1999) (unpublished).[3]

---

[3]1105 Media also cites *Waldron v. Atradius Collections, Inc.*, No. 1:10-cv-551, 2010 WL 2367392, 2010 U.S. Dist. LEXIS 145275 (D. Md. June 9, 2010), another unpublished opinion. The district court, however, declined to decide the question of personal jurisdiction and instead simply transferred venue from Maryland to Illinois. 2010 WL 2367392, at *3, 2010 U.S. Dist. LEXIS 145275, at *9-*10.

In *Slepian*, the Court, in considering a telecommuting employee's lawsuit, held it did not have personal jurisdiction over the defendant employer because the defendant's actions toward the forum state amounted to nothing more than an "accommodation of [the plaintiff's] choice of residence." 1999 WL 109676, at *2, 1999 U.S. App. LEXIS 3371, at *7. Here, however, the circumstances do not involve a mere telecommuting employee and, therefore, we need not consider whether North Carolina should adopt the *Slepian* reasoning.

In this case, the trial court found that Wheeler did not simply work from home, but rather worked out of his "1105 Media office" in Mitchell County, North Carolina -- an office paid for by 1105 Media and constituting a traditional work site of 1105 Media. *See Wait v. Travelers Indem. Co. of Ill.*, 240 S.W.3d 220, 225 (Tenn. 2007) ("An employee telecommutes when he or she takes advantage of electronic mail, internet, facsimile machines and other technological advancements to work from home or a place other than the traditional work site.").

More importantly, the trial court's findings establish that 1105 Media's actions were not merely an accommodation to Wheeler's choice of residence, but rather a result of 1105 Media's own initiative to create an operating division and office in North Carolina in an ongoing and mutually beneficial business

relationship. *See Sheets v. Integrated Info. Util. Sys., Inc.*, No. CIV. 98-1328-KI, 1999 WL 417274, at *1, 1999 U.S. Dist. LEXIS 9719, at *2-*3 (D. Or. June 17, 1999) (declining to follow lower court's recommendation in *Slepian* and finding jurisdiction over out-of-state corporation in action for breach of employment contract of telecommuter where employer initiated contact with employee, and employee's residence in forum state was, at least in part, for convenience of employer due to employer's financial concerns and inability to pay for employee's relocation).

Defendant also argues that the trial court erred by failing to make a finding as to which party initiated contact. While this is a relevant factor to the minimum contacts analysis, our Supreme Court has noted that "[n]o single factor controls, but they all must be weighed in light of fundamental fairness and the circumstances of the case." *B. F. Goodrich Co. v. Tire King of Greensboro, Inc.*, 80 N.C. App. 129, 132, 341 S.E.2d 65, 67 (1986). Additionally, "Rule 52(a)(1) [of the Rules of Civil Procedure] does not require the trial court to recite all of the evidentiary facts; it is required only to find the ultimate facts, i.e., those specific material facts which are determinative of the questions involved in the action and from which an appellate court can determine whether the findings are supported by the evidence and, in turn, support the conclusions of law reached by the trial

court." *Mann Contractors, Inc. v. Flair with Goldsmith Consultants-II, Inc.*, 135 N.C. App. 772, 774, 522 S.E.2d 118, 120-21 (1999).

In this case, the fact that Wheeler sent out the first email was not a determinative factor in the minimum contacts analysis. The trial court made sufficient findings of 1105 Media's contacts with the State to support its exercise of jurisdiction. The court was not then required to make findings of fact on issues that would not alter the conclusion. The trial court could reasonably determine that the question of whom initiated the contact was not material in light of the facts of this case, where the parties engaged in a balanced negotiation, the ultimate structure of their business relationship was proposed by 1105 Media, and 1105 Media entered into a contract with the North Carolina plaintiffs knowingly, voluntarily, and for their own economic benefit. We, therefore, hold that the trial court did not err in concluding that 1105 Media had purposeful minimum contacts with North Carolina.

Once a court finds that a defendant has established minimum contacts with the forum State, it must consider those contacts in light of (1) the interests of North Carolina and (2) the convenience of the forum to the parties. We note, however, that "once the first prong of purposeful minimum contacts is satisfied,

the defendant will bear a heavy burden in escaping the exercise of jurisdiction based on other factors." *Banc of Am. Secs.*, 169 N.C. App. at 701, 611 S.E.2d at 187.

With respect to North Carolina's interest, "[i]t is generally conceded that a state has a 'manifest interest' in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors." *Tom Togs*, 318 N.C. at 367, 348 S.E.2d at 787. Here, Wheeler, a resident of North Carolina, has been injured by 1105 Media's alleged breach of contract, the damaging effect of which is felt in this State. *See Ciba-Geigy Corp. v. Barnett*, 76 N.C. App. 605, 609, 334 S.E.2d 91, 94 (1985) (finding that damaging effect of tort felt in North Carolina was a factor supporting exercise of jurisdiction).

As for the convenience of the parties, litigating in North Carolina would not be convenient for 1105 Media, but, by the same token, litigation in another state would not be convenient for Wheeler. The record does "not indicate that any one State would be more convenient to all of the parties and witnesses than another." *Banc of Am. Secs.*, 169 N.C. App. at 700, 611 S.E.2d at 186. *See Climatological Consulting Corp. v. Trattner*, 105 N.C. App. 669, 675, 414 S.E.2d 382, 385 (1992) (holding that although three of defendant's material witnesses were located in Washington, D.C., "this fact is counterbalanced by the fact that

plaintiff's materials and offices are located here[,]" and "North Carolina is a convenient forum to determine the rights of the parties").

Finally, with respect to the fairness of this State's exercising jurisdiction, "[i]t is well settled that a defendant need not physically enter North Carolina in order for personal jurisdiction to arise." *Better Bus.*, 120 N.C. App. at 501, 462 S.E.2d at 834. Moreover, 1105 Media has not "pointed to any disparity between plaintiff[s] and itself which might render the exercise of personal jurisdiction over it unfair." *Tom Togs*, 318 N.C. at 368, 348 S.E.2d at 787.

We, therefore, hold that the contacts in this case rose to the level satisfying the constitutional minimum under the Due Process Clause necessary in order to justify the exercise of personal jurisdiction over 1105 Media. Accordingly, we affirm the trial court's order denying 1105 Media's motion to dismiss Wheeler's claims.

II

Defendant next argues that the trial court erred in limiting its ruling to Wheeler's claims and withholding ruling on 1105 Media's motion to dismiss with respect to Embark's claims. Defendant points out that the jurisdictional analysis does not consider a plaintiff's contacts with North Carolina, but rather

"the relationship among the defendant, this State, and the cause of action." *Id.* at 366, 348 S.E.2d at 786. It argues that, as a result, the analysis as to Wheeler should apply equally to 1105 Media.

While under this reasoning, our holding in this opinion would result in the conclusion that 1105 Media's motion to dismiss should have been denied as to both plaintiffs, we do not agree with 1105 Media's analysis. The trial court did not defer ruling as to jurisdiction over Embark's claims because of any confusion over Embark's contacts with North Carolina, but rather because it was unclear about the nature of Embark's cause of action. For specific jurisdiction, the sole basis for personal jurisdiction in this case, the focus is on "the relationship among the defendant, this State, *and the cause of action*." *Id.* (emphasis added). Defendant has not cited any authority suggesting that it was error for the trial court to defer ruling when it had insufficient information regarding the nature of Embark's cause of action. *See also Cambridge Homes of N.C.*, 194 N.C. App. at 412-13, 670 S.E.2d at 295-96 (holding that trial court, in determining minimum contacts, should consider, among other factors, "'the source and connection of the cause of action to the contacts'" (quoting *Cooper*, 140 N.C. App. at 734, 537 S.E.2d at 858)).

In federal court, deferral of a motion to dismiss for lack of personal jurisdiction pending discovery is within the discretion of the trial court. *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989) ("If the existence of jurisdiction turns on disputed factual questions, the court may resolve the challenge on the basis of a separate evidentiary hearing, or may defer ruling pending receipt at trial of evidence relevant to the jurisdictional question."). This standard of review is consistent with this Court's holding that a trial court may choose either to hear a motion to dismiss for lack of minimum contacts based on affidavits or "'the court may direct that the matter be heard wholly or partly on oral testimony or depositions.'" *Banc of Am. Secs.*, 169 N.C. App. at 694, 611 S.E.2d at 183 (quoting N.C.R. Civ. P. 43(e)).

Because the trial court was unable to determine based on the affidavits and pleadings the precise nature of Embark's cause of action, we cannot conclude that the trial court abused its discretion in deciding that the motion to dismiss as to Embark should be heard based on deposition testimony that more fully fleshes out that cause of action. Consequently, we also affirm the trial court's order to the extent that it defers ruling on the motion to dismiss as to Embark's claims.

Affirmed.

Judges ROBERT C. HUNTER and McCULLOUGH concur.