Curvature, Inc. v. Cantel Comput. Servs. Ltd., 2019 NCBC 47.

STATE OF NORTH CAROLINA

MECKLENBURG COUNTY

CURVATURE, INC.,

          Plaintiff,

v.

CANTEL COMPUTER SERVICES LTD.,

          Defendant.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
19 CVS 3095

**ORDER AND OPINION
ON DEFENDANT'S MOTION TO
DISMISS AND ALTERNATIVE
MOTION TO STAY**

1. This is Curvature, Inc.'s second attempt to assert claims against Cantel Computer Services Ltd. ("Cantel") for allegedly stealing its employees, customers, and trade secrets. Believing itself bound by a written arbitration agreement, Curvature first initiated an arbitration proceeding in early 2018. That proceeding was closed without a resolution on the merits after Cantel successfully objected to the arbitrator's authority to decide certain threshold questions. Turned away by the arbitrator, Curvature filed this action to seek judicial resolution of its claims.

2. Cantel now contends that this Court, too, is the wrong forum for resolving the parties' disputes. Cantel, an English company, argues that the Court lacks personal jurisdiction over it and seeks to dismiss the complaint on that basis. (ECF No. 4.) In the alternative, it seeks to stay all proceedings under N.C.G.S. § 1-75.12 on *forum non conveniens* grounds. (ECF No. 18.)

3. For the following reasons, the Court **GRANTS** the motion to dismiss and **DENIES** the alternative motion to stay as moot.

*Moore & Van Allen PLLC, by Benjamin P. Fryer, Emily C. Pera, and D. Jared Nobles, Jr., for Plaintiff Curvature, Inc.*

*Carruthers & Roth, P.A., by Brandon Kenneth Jones and Michael J. Allen, for Defendant Cantel Computer Services Ltd.*

Conrad, Judge.

I.
DISCUSSION

4.    When, as here, the parties submit dueling affidavits on the subject of personal jurisdiction, the Court may decide the issue based on the affidavits. *See, e.g., Capitala Grp., LLC v. Columbus Advisory Grp. LTD*, 2018 NCBC LEXIS 183, at *3 (N.C. Super. Ct. Dec. 3, 2018); *see also* N.C. R. Civ. P. 43(e). The Court "must determine the weight and sufficiency of the evidence presented in the affidavits much as a juror." *Banc of Am. Sec. LLC v. Evergreen Int'l Aviation, Inc.*, 169 N.C. App. 690, 694, 611 S.E.2d 179, 183 (2005) (citation, alteration, and quotation marks omitted); *accord Embark, LLC v. 1105 Media, Inc.*, 231 N.C. App. 538, 542, 753 S.E.2d 166, 170 (2014). "[T]he plaintiff bears the burden of proving, by a preponderance of the evidence, grounds for exercising personal jurisdiction over a defendant." *Bauer v. Douglas Aquatics, Inc.*, 207 N.C. App. 65, 68, 698 S.E.2d 757, 761 (2010).

5.    The Court held a hearing on July 17, 2019, at which both parties were represented by counsel. Having considered all relevant matters, the Court finds the following facts by a preponderance of the evidence.

A. <u>Findings of Fact</u>

6.    Curvature provides information technology services in the United States and abroad. (Aff. of Patrick Barry ¶ 3, ECF No. 24 ["Barry Aff."].) A global business often demands a global presence, and so Curvature has a number of wholly owned

subsidiaries outside the United States in addition to keeping its headquarters in Charlotte, North Carolina. (*See* Barry Aff. ¶¶ 3, 4.) Curvature also engages local subcontractors in foreign countries to provide added customer support. (*See* Barry Aff. ¶ 4.)

7. The parties dispute whether Cantel, a technology company based solely in England, agreed to serve as one of Curvature's subcontractors. (*See, e.g.*, Barry Aff. ¶ 6; Aff. of Richard Sharpe ¶¶ 2, 3, 27, 34, ECF No. 15 ["Sharpe Aff."].) It is clear that no contractual relationship existed between Curvature and Cantel before September 2017. Up to that point, Cantel had done some work for a company that would become known as Curvature Services (UK) Limited, one of Curvature's wholly owned subsidiaries. (*See* Sharpe Aff. ¶ 23; Barry Aff. ¶ 12.) All of that work took place in the United Kingdom, and the relevant contracts were between Cantel and the subsidiary, not Cantel and Curvature. (*See* Sharpe Aff. ¶ 23.) Then, in September 2017, Curvature provided a Master Services Agreement, which purported to create a direct contractual relationship between Curvature and Cantel. (*See* Sharpe Aff. ¶ 27.) Cantel signed that agreement, later attempted to withdraw its assent, and now challenges the agreement's validity. (*See* Sharpe Aff. ¶¶ 58, 59, 63.)

8. Whether valid or not, the Master Services Agreement was not negotiated in North Carolina. In fact, there were no negotiations at all. Richard Sharpe, one of Cantel's directors, signed the Master Services Agreement on its behalf. (*See* Sharpe Aff. ¶ 28.) Sharpe's unrebutted testimony is that he received an unsolicited and unexpected e-mail from a Dutch representative of Curvature, requesting that he sign

and return the agreement and a few other forms. (*See* Sharpe Aff. ¶ 26, Ex. A.) Sharpe went along with the request, signed the agreement without reading most of it, and then e-mailed it back to the same Dutch employee just a few hours later. (*See* Sharpe Aff. ¶ 28.) That brief exchange between individuals in England and the Netherlands did not involve anyone based in North Carolina. (*See* Sharpe Aff. ¶ 26.)

9. Nor did the Master Services Agreement contemplate that Cantel would perform any services in North Carolina. Whether Cantel performed any services at all under the agreement is disputed. (*See* Sharpe Aff. ¶¶ 43–47, Ex. D; *see also* Barry Aff. ¶ 13.) The Court need not decide that question because any services Cantel did perform occurred entirely within the United Kingdom (and, thus, outside North Carolina). (*See* Sharpe Aff. ¶¶ 43, 44.) Based on this unrebutted evidence, the Court finds that no services were intended to be performed or actually performed in North Carolina.

10. Though the Master Services Agreement was neither negotiated in nor performed in North Carolina, it does include two relevant references to the State. The first is a choice-of-law provision stating that the agreement shall be governed by North Carolina law. (*See* Barry Aff. Attachment 1 § 17, ECF No. 24.1.)[1] The other provision is an arbitration clause stating, in relevant part, that

> any dispute between the parties arising under this Agreement, excluding any claim related to Curvature's collection of fees and charges payable under this Agreement, shall be submitted exclusively to binding arbitration in accordance with the rules of the American Arbitration

---

[1] The parties dispute the legitimacy of the signatures on this copy of the Master Services Agreement. The Court makes no finding on that issue and cites this version solely for ease of reference to relevant terms.

Association. The venue of such arbitration shall be in Charlotte, North Carolina.

(Barry Aff. Attachment 1 § 17.)

11. In April 2018, Curvature invoked the arbitration clause and filed a demand with the American Arbitration Association. (*See* Sharpe Aff. Ex. M.) It alleged that Cantel had breached the Master Services Agreement by, among other things, hiring away three employees of Curvature's UK-based subsidiary and using Curvature's confidential and trade-secret information to compete against it. (*See* Sharpe Aff. Ex. M.) Cantel opposed the arbitration and persuaded the arbitrator to close the proceeding without rendering a decision on the merits. (*See* Sharpe Aff. ¶ 64, Ex. N.)

## B. Conclusions of Law

12. "Personal jurisdiction refers to the Court's ability to assert judicial power over the parties and bind them by its adjudication." *In re A.B.D.*, 173 N.C. App. 77, 83, 617 S.E.2d 707, 711 (2005) (citation and quotation marks omitted). The Court usually asks, first, whether any statute grants jurisdiction over the defendant and, second, whether exercising jurisdiction would comport with principles of due process. In most cases, this two-step inquiry boils down to one: whether the defendant has "certain minimum contacts" with North Carolina "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citation and quotation marks omitted).

13. Here, Curvature contends that Cantel consented to jurisdiction in North Carolina, thus obviating the usual minimum-contacts analysis. (*See* Opp'n to Mot. Dismiss 9–10, ECF No. 22 ["Opp'n"].) Curvature relies on the Master Services

Agreement's requirements that disputes arising under the agreement be arbitrated in North Carolina and governed by North Carolina law. (*See* Barry Aff. Attachment 1 § 17.) By agreeing to these terms, Curvature contends, Cantel consented to a North Carolina forum and waived its jurisdictional objections. (*See* Opp'n 9–10.) Cantel, on the other hand, argues that the Master Services Agreement is not enforceable, thus negating any contractual consent. (*See* Br. in Supp. of Mot. Dismiss 8, ECF No. 13 ["Br. in Supp."].) It further argues that an agreement to arbitrate in North Carolina does not amount to consent to personal jurisdiction in the courts of this State. (*See* Br. in Supp. 12–16.)

14. The Court need not and does not decide whether the Master Services Agreement is enforceable.[2] Even if it is, Cantel is correct that any consent to arbitrate disputes arising under that agreement in North Carolina is not also consent to adjudicate those disputes in the State's courts.

15. It is certainly true that "parties to a contract may agree in advance to submit to the jurisdiction of a given court." *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 704 (1982) (quoting *National Equip. Rental, Ltd. v. Szukhent*, 375 U.S. 311, 316 (1964)). When they do, there is no need to consider separately whether a defendant also has minimum contacts with the forum State. *See, e.g.*, *Retail Inv'rs, Inc. v. Henzlik Inv. Co.*, 113 N.C. App. 549, 552, 439 S.E.2d

---

[2] Each party has objected to the other's affidavit testimony as to the events surrounding the execution of the Master Services Agreement and Cantel's alleged breaches of the agreement. (*See* Opp'n 1 n.1; Def.'s Mot. Strike Aff. Test., ECF No. 29.) The disputed evidence has no bearing on the Court's decision. Thus, the Court denies and overrules the objections as moot.

196, 198 (1994). Absent fraud or similar unfairness, a contractual consent-to-suit provision satisfies the requirements of due process. *See id.*

16. Some courts also treat a party's agreement to arbitrate in a particular forum as implied consent to personal jurisdiction as to matters ancillary to arbitration, such as enforcement of the arbitration agreement or confirmation of an arbitral award. *See, e.g., Doctor's Assocs., Inc. v. Stuart*, 85 F.3d 975, 979 (2d Cir. 1996). The reason is simple: "if the court in the selected forum did not have personal jurisdiction to compel arbitration, the agreement to arbitrate would be effectively unenforceable . . . ." *St. Paul Fire & Marine Ins. Co. v. Courtney Enters., Inc.*, 270 F.3d 621, 624 (8th Cir. 2001). That outcome would be contrary to the intent of the parties in agreeing to arbitrate and to the strong policy in favor of arbitration.

17. This rule does not apply here. Curvature is not seeking to enforce the arbitration clause in the Master Services Agreement. Rather, it asks this Court to adjudicate the parties' disputes in the first instance. Yet Curvature has not cited any case holding that a defendant's agreement to arbitrate certain claims in a forum represents consent to have those claims adjudicated by the forum's courts.

18. Indeed, the only case from North Carolina on this subject holds otherwise. *See Taurus Textiles, Inc. v. John M. Fulmer Co.*, 91 N.C. App. 553, 558, 372 S.E.2d 735, 738 (1988). There, the Court of Appeals held that the defendant had not expressly submitted to personal jurisdiction by agreeing to arbitrate contractual claims in North Carolina. At most, the arbitration clause subjected defendant to personal jurisdiction "for the purpose of arbitration" but did not also "provide a

sufficient basis for asserting personal jurisdiction over defendant since plaintiff filed suit rather than pursuing arbitration." *Id.*

19. This is consistent with the overwhelming weight of authority in other jurisdictions.[3] As the federal Court of Appeals for the Fifth Circuit recently explained, by agreeing to arbitrate in a given forum, a party does not also "consent to the personal jurisdiction of [the forum's] courts to adjudicate [the] claims in the first instance." *Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 212 (5th Cir. 2016); *accord Halliburton Energy Servs., Inc. v. Ironshore Specialty Ins. Co.*, 921 F.3d 522, 541 (5th Cir. 2019). At most, the "courts of the agreed-upon state may exercise personal jurisdiction over the parties for the limited purpose of compelling arbitration." *Int'l Energy Ventures Mgmt.*, 818 F.3d at 212 (citation and quotation marks omitted).

---

[3] *See, e.g.*, *APL Co. Pte, Ltd. v. Intergro, Inc.*, 2014 U.S. Dist. LEXIS 133172, at *7–8 (N.D. Cal. Sept. 22, 2014) ("District courts and other circuits have consistently held that such an agreement constitutes only consent to personal jurisdiction if it is in the limited context of enforcing an arbitration agreement or award."); *Krones, Inc. v. Bomatic, Inc.*, 2014 U.S. Dist. LEXIS 122111, at *15 (E.D. Wis. Aug. 29, 2014) (discussing "federal court decisions which found that a clause establishing the forum for arbitration does not alone confer personal jurisdiction"); *Foster v. Device Partners Int'l, LLC*, 2012 U.S. Dist. LEXIS 175560, at *12 (N.D. Cal. Nov. 21, 2012) ("However, by and large, these courts have not demonstrated a willingness to find that agreements to arbitrate give rise to personal jurisdiction for purposes not directly related to the agreement to arbitrate."); *Mariac Shipping Co. v. Meta Corp., N.V.*, 2006 U.S. Dist. LEXIS 1184, at *8–9 (S.D.N.Y. Jan. 12, 2006) ("While an agreement to arbitrate in a given venue at least arguably constitutes a consent to personal jurisdiction in that venue for the purpose of enforcing the agreement to arbitrate, this consent goes no farther than proceedings relating to enforcement of the arbitration agreement." (citation and quotation marks omitted)); *United Fin. Mortg. Corp. v. Bayshores Funding Corp.*, 245 F. Supp. 2d 884, 892 (N.D. Ill. 2002) ("The Plaintiff does not cite to any case where a court held that the defendant had consented to jurisdiction to litigate in a particular forum based solely on the parties' agreement to arbitrate in that forum."); *Kahn Lucas Lancaster, Inc. v. Lark Int'l*, 956 F. Supp. 1131, 1139 (S.D.N.Y. 1997) ("The rationale of this rule, however, means that this Court has jurisdiction over Lark only in support of arbitration."); *see also Guam Indus. Servs., Inc. v. Dresser-Rand Co.,* 514 S.W.3d 828, 834–35 (Tex. Ct. App. 2017).

20. Curvature calls this "a technicality." (Opp'n 10.) It isn't. The essence of contract law, including the law governing arbitration agreements, is that parties are bound only to the extent of their mutual assent. Contracting parties are free to draft agreements as they see fit. That includes the right to include or to omit clauses selecting a forum for litigation or consenting to suit there. The omission of these terms strongly suggests an intentional decision to reserve consent—all the more so when silence as to litigation is paired with the express designation of a venue for arbitration. In addition, it bears repeating that "restrictions on personal jurisdiction 'are more than a guarantee of immunity from inconvenient or distant litigation. They are a consequence of territorial limitations on the power of the respective States.'" *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1780 (2017) (quoting *Hanson v. Denckla*, 357 U.S. 235, 251 (1958)). This Court perceives no legitimate local interest in reaching out to exercise authority over a foreign party—particularly one from a foreign country—based on contractual consent when the consent is not express and when it is unnecessary to imply consent to effectuate or preserve the parties' bargain.

21. Curvature also argues that this case is different because it tried arbitration before litigation. In support, it cites cases holding that a party may not oppose arbitration or otherwise forfeit a right to arbitration and then, when sued, demand that the court send the dispute back to arbitration. *See Sink v. Aden Enters.*, 352 F.3d 1197, 1200 (9th Cir. 2003); *Garcia v. Mason Contract Prods., LLC*, 2010 U.S. Dist. LEXIS 92869, at *7 (S.D. Fla. Aug. 18, 2010); *Stanley v. A Better Way Wholesome*

*Autos, Inc.*, 2018 U.S. Dist. LEXIS 137645, at *18–19 (D. Conn. Aug. 15, 2018). These cases are inapposite. Cantel has not argued that the asserted claims should be sent back to arbitration. Its view is that the claims are neither arbitrable nor subject to the jurisdiction of this Court. These positions are not inconsistent, and Cantel's opposition to arbitration does not work a waiver of its opposition to personal jurisdiction.

22. In the absence of Cantel's consent to suit, there is no other basis to exercise jurisdiction over it. As a backstop, Curvature argues that jurisdiction is appropriate under the usual two-step inquiry, but all of its arguments are grounded in Cantel's alleged consent. (*See* Opp'n 19–22.) The only statutory authority that Curvature points to is section 1G-4, which states that a party to a business contract "consents to the personal jurisdiction of the courts of this State" if the contract includes, among other things, a "provision where the parties agree to litigate a dispute arising from the business contract in the courts of this State." N.C.G.S. §§ 1G-4(a), (b). The Master Services Agreement includes an agreement to arbitrate disputes in North Carolina, not an agreement to litigate in the courts of this State. Section 1G-4 does not apply.

23. Nor has Curvature shown that the exercise of jurisdiction would comport with due process in the absence of Cantel's consent. A choice-of-law clause, without other meaningful contacts between defendant and forum, is not enough. *See, e.g.*, *Corbin Russwin, Inc. v. Alexander's Hardware, Inc.*, 147 N.C. App. 722, 728, 556 S.E.2d 592, 597 (2001). And Curvature has not identified any such meaningful

contacts between Cantel and this State.  The record is clear: Cantel is based solely in England and performs services only in the United Kingdom; the Master Services Agreement was not negotiated in North Carolina or with anyone located there; and the agreement does not contemplate that Cantel would perform any services in North Carolina.  The Court concludes that Cantel lacks sufficient minimum contacts with this State to permit the exercise of personal jurisdiction over it.

## II.
## CONCLUSION

24.    For these reasons, the Court **GRANTS** Cantel's motion to dismiss for lack of personal jurisdiction.  The Court **DENIES** Cantel's alternative motion to stay pursuant to N.C.G.S. § 1-75.12(a) and its ancillary motion to strike affidavit testimony as moot.


**SO ORDERED**, this the 13th day of August, 2019.


/s/ Adam M. Conrad
Adam M. Conrad
Special Superior Court Judge
 for Complex Business Cases