Filed 3/6/23  Wang v. Byun CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| JACK WANG,<br><br>     Plaintiff and Appellant,<br><br>     v.<br><br>STEVE BYUN et al.,<br><br>     Defendants and Respondents. | B322774, B322790, B322795<br><br>(Santa Clara County Super. Ct. No. 20CV367266) |

APPEAL from orders of the Superior Court of Santa Clara County, Thang Nguyen Barrett, Judge.  Affirmed.

California Appellate Law Group and Jessica M. Weisel; Balogh & Co. and Ethan A. Balogh for Plaintiff and Appellant.

Covington & Burling, Mark W. Mosier, Daniel G. Randolph, W. Douglas Sprague, and Isaac D. Chaput for Defendants and Respondents.

Plaintiff Jack Wang (plaintiff), a California resident, sued his foreign employer and others for breach of contract, breach of fiduciary duty, and tortious interference with contract. In our review of the trial court's orders granting the defendants' motions to quash for lack of personal jurisdiction, we consider whether defendants "'purposefully directed' [their] activities at residents of the forum, [citation], and the litigation result[ed] from alleged injuries that 'arise out of or relate to' *those activities* [citation]." (*Burger King Corp. v. Rudzewicz* (1985) 471 U.S. 462, 472 (*Burger King*), italics added.)

## I. BACKGROUND

### A.    *Plaintiff's Hiring, Termination, and Lawsuit*

Plaintiff is an attorney and entrepreneur. He has known defendant Steve Byun (Byun) since 1991. The two "grew up in the same town in California and attended the same junior high and high schools." Plaintiff, Byun, and a third person who is not a party to this litigation founded defendant Widus Partners (HK) Limited (Widus Partners) in 2010. Widus Partners is a "cross-border strategic advisory and investment firm." It is wholly owned by defendant Widus Holdings (HK) Limited (Widus Holdings).[1]

Plaintiff left Widus Partners and relinquished his interest in the company in 2012. Around the same time, he began working in the cryptocurrency industry and founded a company

---

[1]    Byun, Widus Partners, and Widus Holdings submitted a joint respondents' brief. We refer to them collectively as "defendants." We also refer to Widus Partners and Widus Holdings as the "entity defendants."

that "developed various technology products relating to Bitcoin, cryptocurrencies, and blockchain . . . ." Plaintiff provided Byun "free[ ] . . . advice and guidance" regarding cryptocurrencies and, in early 2018, Byun invited plaintiff to return to Widus Partners "running a new practice dedicated to [initial coin offerings (ICOs)], blockchain technology, and cryptocurrencies." Byun emphasized Widus Partners' "growing traction and visibility in the Korean market."

As alleged in plaintiff's complaint, plaintiff was "hesitant" to re-join Widus Partners in part due to the firm's "lack of resources outside of South Korea." Byun acknowledged plaintiff "did not, at that time, have a business network within Korea," but emphasized it was not "necessary for [plaintiff] to immediately develop a large book of business" and stressed that Widus Partners "operated on . . . a 'one-firm' philosophy," meaning if any one partner's business was slow they "could contribute on projects within other practice groups."

Plaintiff returned to Widus Partners part-time in 2018 "on a good-faith basis, without a contractual agreement." During this period, he was allegedly "involved with introducing potential clients to Widus Partners, signing new clients, and providing services to existing clients . . . ."

Plaintiff soon decided to join Widus Partners on a full-time basis, and he and Byun (on behalf of Widus Partners) executed an employment agreement in October 2018. Plaintiff's position was "Partner/Head of ICO Advisory and Blockchain Business."[2]

---

[2] Plaintiff asks us to take judicial notice of a page on the Securities and Exchange Commission's (SEC's) website for a definition of "initial coin offering" to "help the Court understand

The term of the agreement was for one year, to be automatically renewed unless terminated either by the company with cause at any time or by either party without cause upon 60 days' notice.

As set forth in the employment agreement, plaintiff was entitled to a salary plus an "incentive bonus based on his contribution to each of the projects he had marketed, sourced and executed." Plaintiff was also entitled to an equity profit share based on his contractually-required purchase, for $400,000, of an eight percent stake in Widus Holdings. Plaintiff and Byun (this time on behalf of Widus Holdings) executed a separate promissory note to finance his purchase of these shares. Plaintiff and Byun (again on behalf of Widus Holdings) also executed a shareholder agreement, which included a put option for plaintiff (requiring Widus Holdings to buy out his shares) and a call option for the company (requiring plaintiff to sell his shares to Widus Holdings). All three contracts—the employment agreement, the promissory note, and the shareholder agreement—include a Hong Kong choice of law provision.

For reasons that are not pertinent to this appeal, Byun notified plaintiff in October 2019 that his employment agreement was being terminated and Widus Holdings was exercising its option to buy plaintiff's shares in the company. At that time,

---

the scope of [plaintiff's] position at Widus." We decline. The term is adequately defined in caselaw: "An ICO is a fundraising event where an entity offers participants a unique digital coin, token, or digital asset in exchange for consideration, frequently in the form of virtual currency, such as Bitcoin and Ether, or fiat currency." (*Securities and Exchange Commission v. Blockvest, LLC* (S.D. Cal., Apr. 20, 2020, No. 18-cv-2287-GPC (MSB)), 2020 WL 1910355, *1, fn. 1.)

4

plaintiff had paid $200,000 of the $400,000 due under the promissory note.

This litigation arises out of defendants' alleged: failure to pay any incentive bonus for 2019; refusal to provide audited financial statements to verify the calculation of plaintiff's equity profit share; and refusal to pay the equity profit share, unreimbursed business expenses, or $200,000 for plaintiff's shares in Widus Holdings without a release and indemnification. Plaintiff alleged both entity defendants are alter egos of Byun. Plaintiff asserted causes of action for breach of contract against Widus Partners and Widus Holdings, breach of fiduciary duty against Widus Partners and Byun, and tortious interference with contract against Byun.[3]

---

[3] Plaintiff also sought the appointment of a receiver or a determination that this is a proper case for interpleader based on plaintiff's abortive self-help efforts. That is, when negotiations regarding plaintiff's departure became contentious, plaintiff added a security key to certain crypto assets held by Widus Partners to "prevent[ ] Widus Partners from unilaterally transferring the . . . tokens to any other person or entity." Plaintiff relinquished the key to defendants in December 2020 and abandoned the receiver and interpleader claims. On appeal, plaintiff asks us to take judicial notice of an eight-fold increase in the value of these assets between October 2020 and the first half of 2021. The request is denied. Plaintiff has not established that the website from which he downloaded the price information (coingecko.com) is a "source[ ] of reasonably indisputable accuracy" (Evid. Code, § 452, subd. (h)), and the value of these assets does not impact our analysis in any case.

5

*B.     Motions to Quash*

Widus Partners and Widus Holdings filed a joint motion to quash plaintiff's summons for lack of personal jurisdiction in August 2020.  As we shall discuss, the trial court granted the entity defendants' motion by the time Byun, who was served later than the entity defendants, filed a similar motion to quash in December 2020.  The entity defendants and Byun argued they are not subject to general or specific personal jurisdiction in California and, in the alternative, that California is an inconvenient forum.

Both Widus Partners and Widus Holdings are headquartered and incorporated in Hong Kong.  Neither company has ever been incorporated, qualified, or registered to do business in California; had a registered agent in California; paid taxes in California; held a bank account in California; or owned or leased real or personal property in California.  According to Widus Partners' chief operating officer, Jonathan Lee, plaintiff was the company's only employee residing in California during the term of his employment.  His recruitment and hiring was managed entirely through email and phone calls.

Byun resides in South Korea.  He has not lived in California since 2003 and, since 2010, he has visited California no more than once each year for no more than two weeks at a time.  According to Byun, plaintiff suggested that he work remotely from California when he rejoined Widus Partners in 2018.  Byun was "apprehensive" about this arrangement "because the remainder of Widus Partners personnel worked from and resided in Asia (specifically, Hong Kong, Seoul, and Singapore)."  Plaintiff was "never require[ed]" to work from California and travelled frequently to Asia for work, "remaining for

6

approximately two to three weeks at a time." Indeed, Widus Partners and plaintiff eventually agreed "that he should reside in Seoul on a semi-permanent basis, at least six months, returning to the United States intermittently, as he needed," but Widus Partners terminated plaintiff "[b]efore that plan came to fruition."[4]

In opposition, plaintiff argued Byun and the entity defendants are subject to both general and specific jurisdiction in California and, in any event, the trial court should permit further jurisdictional discovery. He contended Widus Partners is subject to personal jurisdiction in California in its own right; Widus Holdings in its own right and as an alter ego of Widus Partners; and Byun in his own right and as an alter ego of the entity defendants.

Plaintiff submitted a declaration stating that "Byun recruited [him] to rejoin Widus Partners precisely because [he] was a resident of California, so that Widus Partners could tap into San Francisco's and Silicon Valley's tech communities. It was to Widus Partners' advantage to have a resident of California—and specifically, a person who lives near the technology companies in Northern California—be a partner in Widus Partners." Plaintiff claimed that Byun provided "express

---

[4]     Plaintiff alleged substantially the same facts in his complaint: "During [a] trip [to South Korea in September 2019], Byun told [plaintiff] that he believed that [plaintiff] should spend more time in South Korea. While [plaintiff] did not want to move to South Korea, and expressed the same to Byun, they agreed that [plaintiff] would visit South Korea to pursue and execute on Widus Partners' business relationships for longer durations."

7

oral assurances . . . that [he] could and should remain in California while working for Widus Partners."[5]

Plaintiff submitted various marketing materials purporting to show, as plaintiff put it, that Widus Partners "touted the fact that it had a 'presence' and an 'office' in California" based solely on his affiliation with the firm. These included "pitch decks" listing locations in (and including images of) various Asian cities and San Francisco. The pitch decks name plaintiff as a contact point for Widus Partners in San Francisco. Plaintiff also submitted a sample email from Byun that includes a signature block listing locations in Asian cities and San Francisco. Archived versions of Widus Partners' website mention the firm's "presence" in various Asian cities and Silicon Valley and include plaintiff's contact information in San Francisco. These references to California were removed from Widus Partners' website when plaintiff was terminated.

Plaintiff declared he personally forwarded at least one of the pitch decks mentioning San Francisco "to two individuals at a San Francisco company . . . ." In 2018 and 2019, Widus Partners' business in California included "contracts with several California companies, for which [plaintiff] was at least partially responsible." At least one of these contracts included California choice of law and forum selection provisions. Plaintiff further noted that Byun visited and communicated with business contacts in California, including during a three-day conference

---

[5] By comparison, plaintiff alleged in his complaint that Byun "assured [plaintiff] that [he] could remain in California where he would be close to technology companies in [N]orthern California" in order "[t]o *entice* [plaintiff]" to join Widus Partners. (Emphasis added.)

that Byun attended with plaintiff in Lake Tahoe and two trips to Los Angeles (apparently without plaintiff) to meet with prospective clients.

Plaintiff asserted Widus Partners "contracted with [a] San Francisco resident" to serve as its chief financial officer in 2018 or 2019 and "engaged" two California residents as "[v]enture [p]artners" in 2019. Plaintiff did not state whether these individuals remained California residents or performed their work in California. He described the work of the venture partners to include referring companies to Widus Partners and providing leads on investors.

Plaintiff also complained in his oppositions to the motions to quash that defendants refused to provide requested jurisdictional discovery (and he separately moved to compel further responses). Plaintiff had propounded document requests and interrogatories seeking, among other things, information relating to the entity defendants' use of marketing materials (e.g., the pitch decks discussed *ante*), whether Widus Partners continued to tout its "presence" in California after plaintiff's termination, Widus Holdings' status as an asserted alter ego of Widus Partners, Byun's contacts with California, and Byun's alleged alter ego relationship with the entity defendants.

C. *The Trial Court's Orders*
1. *The entity defendants*
The trial court held a hearing on the entity defendants' motion to quash in October 2020 and granted the motion. Rejecting plaintiff's contention that the entity defendants are subject to general personal jurisdiction in California, the trial court emphasized that marketing materials mentioning a

9

California presence, California employees, and contracts with California businesses showed, "[a]t best, . . . that Widus Partners operated in California," but not to a degree "that it can be deemed at home in the forum." The fact that Widus Holdings entered into two contracts with plaintiff was similarly insufficient to subject it to general personal jurisdiction in California.

The trial court's analysis of specific personal jurisdiction focused on the entity defendants' contracts with plaintiff. Emphasizing the Hong Kong choice of law provisions, the absence of evidence that negotiations over plaintiff's return to Widus Partners were conducted in California, "limited information" about where plaintiff performed his work for Widus Partners, and no indication that plaintiff was required to work in California ("the employment contract . . . happened to be performed in California because that is where [p]laintiff wanted to reside"), the trial court found plaintiff did not meet his burden of proving the entity defendants purposefully availed themselves of the privilege of doing business in California. As a result, the trial court did not analyze whether plaintiff's claims arise out of or relate to the entity defendants' California-directed activities or whether it would be reasonable to exercise jurisdiction over them. Additionally, the trial court determined plaintiff did "not adequately demonstrate [further jurisdictional] discovery [was] likely to lead to the production of evidence of facts establishing jurisdiction."

After plaintiff noticed his appeal of the trial court's order granting the motion to quash, the court dismissed the entity defendants without prejudice. Plaintiff moved to vacate the dismissal on the grounds that the clerk of the court had authority to perform only ministerial acts in entering the dismissal, the

10

court lacked authority to enter dismissal after plaintiff perfected his appeal, and plaintiff was deprived of due process. The trial court denied the motion to vacate, reasoning the dismissal was based on the trial court's ruling on the motion to quash—as to which plaintiff was not denied an opportunity to be heard—and the court had jurisdiction to enter dismissal while the appeal was pending because it did not alter the status quo. Plaintiff noticed a separate appeal from this order.

### 2. *Byun*

The trial court held a hearing on Byun's motion to quash months later (owing to the different time at which Byun was served with a summons) and granted that motion too. The trial court determined Byun was not subject to general jurisdiction in California because plaintiff's assertion that Byun did "'a substantial amount if business in Santa Clara County'" was "vague and conclusory," no authority supported his theory that Byun's United States citizenship was alone sufficient to establish general jurisdiction, and plaintiff's alter ego theory failed because the entity defendants were not subject to general jurisdiction in California.

As to specific jurisdiction, the trial court found Byun did not personally "perform[ ] acts or transactions in California to constitute purposeful availment" and specific jurisdiction therefore depended on an alter ego theory. As to that theory, the court largely reiterated its reasons for granting the entity defendants' motion to quash: the Hong Kong choice of law provisions in plaintiff's contracts and the lack of any evidence that plaintiff was required to work from California. Finding no purposeful availment, the trial court did not analyze whether

11

plaintiff's claims arise out of or relate to Byun's California-directed activity or whether it would be reasonable to exercise jurisdiction over him. As with the entity defendants, the trial court found that plaintiff failed to demonstrate further jurisdictional discovery was likely to lead to the production of evidence establishing jurisdiction. Plaintiff noticed an appeal from this order, as well.

### D. Consolidation of Appeals

Plaintiff's appeals from the orders granting the entity defendants' motion to quash (B322774), Byun's motion to quash (B322790), and dismissing the entity defendants (B322795) were consolidated. Our Supreme Court ordered these matters transferred from the Sixth Appellate District to this District in August 2022.

## II. DISCUSSION

Plaintiff has (appropriately) abandoned the argument made below that defendants are subject to general personal jurisdiction in California, and his arguments for specific jurisdiction lack merit. The trial court correctly determined that defendants did not purposefully avail themselves of the benefits of doing business in California through contracts with plaintiff that were governed by Hong Kong law and indifferent as to where plaintiff would work, particularly in the absence of non-conclusory evidence that plaintiff played any role in defendants' business with California-based clients during the contractual relationship. Although the trial court's purposeful availment analysis was unnecessarily limited to defendants' interactions with plaintiff, the limitation is of no moment because plaintiff also has not

12

established his claims arise out of or relate to any of defendants' activities that can be said to be directed at California. Additionally, the trial court did not abuse its discretion in determining that further jurisdictional discovery was not likely to yield jurisdictionally relevant information.[6]

> ### A. *Principles of Personal Jurisdiction*

California's long-arm statute (Code Civ. Proc., § 410.10) authorizes California courts to exercise jurisdiction on any basis not inconsistent with the Constitution of the United States or the Constitution of California. "The Due Process Clause of the Fourteenth Amendment constrains a State's authority to bind a nonresident defendant to a judgment of its courts. [Citation.] Although a nonresident's physical presence within the territorial jurisdiction of the court is not required, the nonresident generally must have 'certain minimum contacts . . . such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice."' [Citation.]" (*Walden v. Fiore* (2014) 571 U.S. 277, 283 (*Walden*), quoting *International Shoe Co. v. Washington* (1945) 326 U.S. 310, 316.)

Distilled to three commonly cited elements, "[a] court may exercise specific jurisdiction over a nonresident defendant only if: (1) 'the defendant has purposefully availed himself or herself of forum benefits' [citation]; (2) 'the "controversy is related to or

---

[6]  Plaintiff acknowledges his argument for vacating the trial court's order dismissing the entity defendants is contingent upon our reversing the trial court's order granting the entity defendants' motion to quash. Because we affirm the trial court's order granting the entity defendants' motion to quash, the dismissal order will stand.

13

'arises out of' [the] defendant's contacts with the forum'"
[citations]; and (3) '"the assertion of personal jurisdiction would
comport with 'fair play and substantial justice'"' [citations]."
(*Pavlovich v. Superior Court* (2002) 29 Cal.4th 262, 269
(*Pavlovich*); accord *Jayone Foods, Inc. v. Aekyung Industrial Co.
Ltd.* (2019) 31 Cal.App.5th 543, 553 (*Jayone*).)  Acts by the
defendant that are relied on to give rise to specific jurisdiction
"must be the defendant's own choice and not 'random, isolated, or
fortuitous,'" and they "must show that the defendant deliberately
'reached out beyond' its home—by, for example, 'exploi[ting] a
market' in the forum State or entering a contractual relationship
centered there." (*Ford Motor Co. v. Montana Eighth Judicial
Dist. Court* (2021) ___ U.S. ___ [141 S.Ct. 1017, 1025] (*Ford*).)
The defendant's contacts need not bear "a strict causal
relationship" to the litigation (*Id.* at ___ [141 S.Ct. at 1026]), but
"there must be 'an affiliation between the forum and the
underlying controversy, principally, [an] activity or occurrence
that takes place in the forum State.  [Citation.]"  (*Bristol-Myers
Squibb Co. v. Superior Court* (2017) 582 U.S. 255, 264 (*Bristol-
Myers*).)

       ""When a defendant moves to quash service of process" [on
jurisdictional grounds], "the plaintiff has the initial burden of
demonstrating facts justifying the exercise of jurisdiction.""'
(*Jayone, supra*, 31 Cal.App.5th at 553.)  The plaintiff must prove
jurisdictional facts by a preponderance of the evidence.  (*In re
Automobile Antitrust Cases I & II* (2005) 135 Cal.App.4th 100,
110 (*Automobile Antitrust Cases*).)

       Where there is no conflict in the evidence, "'the question of
jurisdiction is purely one of law and the reviewing court engages
in an independent review of the record.  [Citation.]'  [Citation.]"

(*Jayone, supra*, 31 Cal.App.5th at 553.)  But where, as here, there is conflicting evidence, we review the trial court's factual determinations for substantial evidence.  (*Ibid.*)  We review the trial court's ruling on a motion for a continuance for jurisdictional discovery for abuse of discretion.  (*Automobile Antitrust Cases*, *supra*, 135 Cal.App.4th at 127.)

> B.      *Defendants Did Not Purposefully Avail Themselves of Forum Benefits Through Their Contracts with Plaintiff or Tortious Activity Directed at the Forum*

"Th[e] 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts . . . or of the 'unilateral activity of another party or a third person[.]' . . .  Jurisdiction is proper, however, where the contacts proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum State. . . ." (*Burger King, supra*, 471 U.S. at 475, citations and footnotes omitted.)  In the context of a contract dispute, "an individual's contract with an out-of-state party *alone* . . . clearly . . . cannot" establish sufficient minimum contacts to establish specific jurisdiction.  (*Id.* at 478.)  Rather, we consider factors including "prior negotiations and contemplated future consequences, . . . the terms of the contract[,] and the parties' actual course of dealing . . . ."  (*Id.* at 479.)

The inquiry that specific jurisdiction precedent calls us to undertake is highly fact-specific, and courts considering whether a defendant employer has purposefully availed itself of forum benefits by permitting an employee to work remotely in the forum state have reached different conclusions under only

15

slightly varying circumstances. In *King v. Prodea Systems, Inc.* (D. Mass. 2019) 433 F.Supp.3d 7, for instance, the district court acknowledged the defendant employer "merely acquiesced to [the plaintiff's] request to work remotely from [the forum state] for [the plaintiff's own] benefit," but concluded the defendant "nonetheless purposefully and intentionally engaged with [the plaintiff] in [the forum state] through, among other actions, recruiting him, negotiating his employment contract, withholding state income taxes from his salary and soliciting business with his assistance in [the forum state] on at least two occasions." (*Id.* at 15.) By contrast, in *Fields v. Sickle Cell Disease Association of America, Inc.* (E.D. N.C. 2018) 376 F.Supp.3d 647, the plaintiff employee was hired by the defendant while a resident of the forum state and worked remotely for the defendant in the forum state, but the district court determined the defendant's contacts with the forum state were "properly characterized as unilateral activity by the plaintiff," because, among other things, the relevant contracts did not require her to work in the forum state and were governed by the laws of another state. (*Id.* at 652-653.)

Plaintiff contends the trial court disregarded "undisputed" evidence as to the negotiation and contemplated future consequences of his contracts with the entity defendants, including that they recruited him "because he was a California resident" and intended for him to work "primarily in California" to help them "tap into San Francisco's and Silicon Valley's tech communities." But substantial evidence supports the trial court's contrary conclusion that Byun reached out to plaintiff, a childhood acquaintance with whom he co-founded Widus Partners less than a decade earlier, principally based on

16

plaintiff's knowledge of the crypto industry and defendants were indifferent as to where plaintiff resided.

Primarily, and contrary to plaintiff's conclusory assertion in opposition to the motions to quash that he was hired "precisely because" he was a resident of San Francisco, plaintiff's operative complaint states Byun emphasized the firm's success in South Korea, reassured him about his lack of an established business network in that country by explaining he could contribute to other partners' projects, and told him he could remain in California to "entice" him to join Widus Partners. At best, these statements demonstrate ambivalence regarding the location of plaintiff's residence. That ambivalence is further reinforced by the employment agreement's silence on the issue: there is no provision that indicates plaintiff was being hired because of his California location or to exploit the California market, and the agreement includes an integration clause representing it is "the entire agreement and understanding between the parties."[7] (See *Wright v. Zacky & Sons Poultry, LLC* (M.D. N.C. 2015) 105 F.Supp.3d 531, 540 [no personal jurisdiction where the plaintiff employee performed duties under his contract in the forum state, but "neither [the defendant] nor the contract required him *to be in* [the forum state] while performing those duties"].) Plaintiff's own complaint and the employment agreement's silence are

---

[7] Plaintiff's suggestion in his reply brief that he and Byun orally agreed that he "would remain in California"—with the effect that he was *required* to do so under the employment contract—has no basis in the record. Plaintiff stated in his own declaration that Byun "assur[ed]" him he "*could* and *should* remain in California while working for Widus Partners." (Emphasis added.)

17

enough to support the trial court's ruling, but the record additionally reveals Byun was "apprehensive" about plaintiff working remotely from California.[8]  Under these circumstances, the parties' negotiations were directed toward California only to the extent that plaintiff had discretion to remain in California and do not establish defendants purposefully availed themselves of California benefits in negotiating plaintiff's return to the company.

The affirmative terms of the employment agreement, shareholder agreement, and promissory note provide further support for a finding of no purposeful availment.  The renewable one-year employment agreement does not indicate defendants contemplated a permanent outpost in California—it is a far cry from the "carefully structured 20-year relationship" discussed in *Burger King*.  (*Burger King*, *supra*, 471 U.S. at 480.)  In addition, and although a choice of law provision is "not dispositive," it "may 'reinforce[ ]' whether or not a foreign corporation has made such 'a deliberate affiliation with the forum State' as to support a conclusion that it should have reasonably foreseen 'possible litigation there.'" (*T.A.W. Performance, LLC v. Brembo, S.p.A.* (2020) 53 Cal.App.5th 632, 646, quoting *Burger King*, *supra*, at 482.)  Here, the employment agreement, shareholder agreement, and promissory note are all governed by Hong Kong law.  This

---

[8]     Strictly speaking, Byun's declaration that includes this statement was submitted only in support of his own motion to quash.  In these consolidated appeals of personal jurisdiction rulings involving related defendants, however, our consideration of the admission need not be so limited.  Moreover, as already explained, the result as to the entity defendants would be the same even without consideration of Byun's declaration.

"reflects a deliberate affiliation with" the entity defendants' headquarters and place of incorporation—not California. (*Halyard Health, Inc. v. Kimberly-Clark Corp.* (2019) 43 Cal.App.5th 1062, 1076.)

Plaintiff nonetheless contends the parties' actual course of dealing demonstrates the contracts were directed toward California. But there is no evidence defendants facilitated plaintiff's work from California—for instance, by providing office space or equipment.[9] As plaintiff emphasized in his declaration, his "California home was Widus Partners' California 'office.'" Plaintiff's assertion that he was "at least partially responsible" for Widus Partners' contracts with California companies is insufficient to establish the agreements between plaintiff and the entity defendants were California-directed. (*Strasner v. Touchstone Wireless Repair & Logistics, LP* (2016) 5 Cal.App.5th 215, 222 [a plaintiff cannot meet their burden in opposing a motion to quash with "vague and conclusory assertions of ultimate facts"].)

Indeed, plaintiff presented no evidence regarding the nature of his role in defendants' relationships with California clients. He points to nothing in the appellate record suggesting the services Widus Partners provided under these contracts

---

[9] Several cases cite the provision of remote working technology as a factor weighing in favor of purposeful availment. (See, e.g., *Kumar v. Opera Solutions OPCO, LLC* (S.D. N.Y., Sept. 28, 2021, No. 1:20-cv-6824-GHW), 2021 WL 4442832, *8; *Hall v. Rag-O-Rama* (E.D. Ky. 2019) 359 F.Supp.3d 499, 510.)

19

called for his specialized knowledge of the crypto industry.[10] Moreover, there is no evidence as to where plaintiff performed work related to these contracts or even whether his contributions occurred during his contractual employment (as opposed to the period during which he consulted for Widus Partners).[11]  In light of evidence that Widus Partners contracted with California-based "venture partners" and operated under a "one-firm" policy in which plaintiff could contribute to others' projects, we cannot assume plaintiff's residence in California was a material factor in

---

[10]    The only relationship between Widus Partners and a California-based business that plaintiff discussed in any detail in his declarations was Byun's efforts to solicit business from a company called "Entertainment Studios" in Los Angeles. Plaintiff conspicuously failed to state, however, that he accompanied Byun on trips to Los Angeles or played any other role in these efforts.  Plaintiff's further statement, made "[o]n information and belief," that Widus Partners signed non-disclosure agreements "and/or other agreements" with California companies "to have access to deal information and to be compensated if a deal . . . transpired" likewise did not suggest personal involvement and was not competent evidence in any case. (*Baustert v. Superior Court* (2005) 129 Cal.App.4th 1269, 1275, fn. 5.)

[11]    Plaintiff stated in a declaration that he sent one of the pitch decks to "a San Francisco company" (not one of the California firms with which Widus Partners ultimately contracted) in March 2018, prior to his contractual relationship with defendants.  There is no evidence regarding plaintiff's contacts with California companies after his formal employment commenced.  Plaintiff stated he sent one of the pitch decks to a venture capital firm in October 2019, but gave no indication that the firm is based in California.

20

securing this business—and assumptions are all the record would permit. In fact, the available evidence in the record points to a contrary conclusion: the pressure plaintiff felt to spend more time in South Korea toward the end of his tenure in order to, as he put it in the complaint, "pursue and execute on Widus Partners' business relationships for longer durations," suggests his work was substantially focused on Asian clients.

Plaintiff's reliance on references to California in marketing materials to establish the contracts were directed toward California is similarly unavailing. In the absence of evidence that defendants required or even requested that plaintiff reside in California, references to his location in pitch decks, on Widus Partners' website, and in email signature blocks amount to little more than the accurate reporting of a fact that was entirely within plaintiff's control. The fact that Widus Partners had no California-based successor waiting in the wings and removed all references to California from its marketing materials following plaintiff's departure underscores that the object of defendants' relationship with plaintiff was to avail itself of his crypto expertise—not his location. The litany of non-California cases plaintiff cites discussing scenarios in which foreign defendants expressly hired personnel to establish a foothold in the relevant forum states are accordingly factually inapposite.[12]

---

[12] In *Berdux v. Project Time & Cost, Inc.* (N.D. Cal. 2009) 669 F.Supp.2d 1094, the defendants "approached [the plaintiff] with an offer to serve as [their] first Regional Manager-Western Region, and to open [their] first Western regional office in San Francisco, California." (*Id.* at 1098.) The district court determined the defendants were subject to personal jurisdiction in California because "the unambiguous purpose of the[ir]

Plaintiff's citation of *Swenberg v. Dmarcian, Inc.* (2021) 68 Cal.App.5th 280 (*Swenberg*) to argue that "claiming affiliation with a California business subjects a non-resident to jurisdiction[ means] the same must be true when the non-resident claims it is operating directly in California" rests on a misreading of that case. In *Swenberg*, the Court of Appeal held that a citizen of the Netherlands who held himself out as a leader of a company headquartered in California (including on the company's website) purposefully availed himself of forum benefits and was subject to personal jurisdiction in California. (*Id.* at 296, 298.) But the

contract [with the plaintiff] was to initiate and engage in business in the state of California." (*Id.* at 1101.) In *Unlimited Prepaid, Inc. v. Airvoice Wireless Express, LLC* (C.D. Cal., May 10, 2017, No. CV 17-01409 SJO (JPRx)) 2017 WL 8230848, the district court held a Michigan defendant purposefully availed itself of the benefits of doing business in California by entering into a contract for which the undisputed purpose "was to enroll California residents in [a phone program]" and in which California was listed as the "sole 'Authorized Carrier Area(s)/Locations.'" (*Id.* at *8.) In *Cannon v. Communication Components, Inc.* (W.D. Wash., Jan. 28, 2020, No. C19-804RSM) 2020 WL 433351, the district court emphasized that the defendant hired the plaintiff "in part to enter the regional market [that included the forum state] after prior attempts were unsuccessful." (*Id.* at *4.) In *Embark, LLC v. 1105 Media, Inc.* (N.C. Ct. App. 2014) 753 S.E.2d 166, the defendant employer paid rent for the plaintiff employee's office in the forum state and its "actions were not merely an accommodation to [the plaintiff's] choice of residence, but rather a result of [its] own initiative to create an operating division and office in [the forum]." (*Id.* at 174.)

defendant did not *only* appear on the California company's website:  Among other things, he ran a European enterprise whose web address "automatically route[d] to [the California company's] Web site, administered in California, and receiv[ed] prospective customers directed to [the European entity] by a[n] . . . employee [of the California company] in California."  (*Id.* at 298.)  By contrast, plaintiff presented no evidence that his presence in California actually attracted California-based clients.

Our conclusion is the same under the "effects test" derived from *Calder v. Jones* (1984) 465 U.S. 783.  Courts apply this test to determine purposeful availment in cases involving intentional torts—such as plaintiff's claim against Byun for tortious interference with contract.  (*Pavlovich, supra,* 29 Cal.4th at 269.)  The plaintiff must demonstrate that the defendant committed an intentional act, expressly aimed at or targeting the forum state, with the knowledge that the act would cause harm in the forum state.  (*Id.* at 271.)  The focus of this analysis is the defendant's contacts with the forum as opposed to their contacts with the plaintiff.  (*Walden, supra,* 571 U.S. at 290 ["The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way"].)

Here, plaintiff alleged Byun interfered with the shareholder agreement by inducing Widus Holdings to decline to timely re-purchase plaintiff's shares without conditions.  None of the relevant acts occurred in California, and their only connection to the forum is plaintiff's decision to reside here.  These circumstances are analogous to those in *Walden*, in which the high court explained that a police officer's seizure of the Nevada plaintiffs' cash in Georgia did not support personal jurisdiction in

23

Nevada: "[The plaintiffs] lacked access to their funds in Nevada not because anything independently occurred there, but because Nevada is where respondents chose to be at a time when they desired to use the funds seized by [the defendant]." (*Walden*, *supra*, 571 U.S. at 290.)

## C. *Plaintiff's Claims Do Not Arise Out of or Relate to Defendants' Forum-Directed Activities*

Our conclusion that defendants' dealings with plaintiff were not California-directed should not be understood as a holding that they may not have purposefully availed themselves of forum benefits in other ways. We shall accordingly consider, to the extent the record permits, defendants' other contacts with California as well.[13] But in doing so, we must evaluate the "connection between the forum and the specific claims at issue" (*Bristol-Myers*, *supra*, ___ U.S. at ___ [137 S.Ct. at 1781]), and on

---

[13] Defendants do not dispute plaintiff's assertion that, "in 2018 through 2019, Widus Partners entered into contracts with several California companies," one of which included California choice of law and forum selection provisions. Despite the lack of detail regarding where Widus Partners and its counterparties were to perform under these contracts, we will assume for the sake of argument that these contacts were sufficient to establish defendants purposefully availed themselves of forum benefits.

We do not, however, assume defendants purposefully availed themselves of forum benefits through their engagement of venture partners or a chief financial officer based in California. There is no evidence that defendants required these individuals to remain in or direct their work toward California. In any case, plaintiff does not argue that his claims arise out of or relate to defendants' relationships with these individuals.

this score, plaintiff's personal jurisdiction showing still falls short.

"In order for a state court to exercise specific jurisdiction, 'the *suit*' must 'aris[e] out of or relat[e] to the defendant's contacts with the *forum*.' [Citations.]" (*Bristol-Myers*, *supra*, ___ U.S. at ___ [137 S.Ct. at 1780].) Although the first part of the "arise out of or relate to" formulation "asks about causation," the "back half, after the 'or,' contemplates that some relationships will support jurisdiction without a causal showing." (*Ford*, *supra*, ___ U.S. at ___ [141 S.Ct. at 1026].) But "[t]hat does not mean anything goes." (*Ibid.*) The "'essential foundation' of specific jurisdiction" is a "'relationship among the defendant, the forum, and the litigation.'" (*Id.* at ___ [141 S.Ct. at 1028].)

Plaintiff's claims arise out of his contractual relationships with the entity defendants and Byun's alleged meddling in those relationships. As we have already discussed, plaintiff failed to demonstrate a connection between his contractual relationships with defendants and defendants' relationships with California clients. Notwithstanding plaintiff's assertion that he was "at least partially responsible" for Widus Partners' contracts with California companies, there is no indication as to the nature or timing of his involvement. Plaintiff does not contend that Widus Partners' relationships with California companies had any bearing on the entity defendants' alleged breach of their obligations to him. Assuming defendants may be subject to jurisdiction in California in a dispute concerning its services to California clients, that is not the dispute this case presents. The "arising out of or relate to" element of specific personal jurisdiction is accordingly unsatisfied even taking a broader view of the purposeful availment inquiry.

25

## D. *Plaintiff Was Not Entitled to Further Jurisdictional Discovery*

Plaintiff contends the trial court abused its discretion in failing to continue the hearing on the entity defendants' motion to quash until he had an opportunity to conduct additional jurisdictional discovery for two reasons: (1) the court mistakenly believed plaintiff had not sought to compel further responses at the time of the hearing and (2) the court erroneously concluded further discovery was unlikely to lead to evidence supporting personal jurisdiction. We need only address the second ground for the trial court's ruling, which was independently sufficient to deny plaintiff's request.

In its order granting the entity defendants' motion to quash, the trial court reasoned in part as follows: "[I]t appears the discovery is aimed at establishing that Widus Partners and Widus Holdings represented in marketing materials that they had a presence or office in California during the relevant time period. However, . . . the purported fact that the entities had an office in the forum is not dispositive as the relevant inquiry with respect to general jurisdiction is whether they were at home in California." We do not construe this passage to mean, as plaintiff suggests, the trial court "ignore[d] [plaintiff's] argument that the presence in California supported the exercise of *specific* jurisdiction." The trial court addressed plaintiff's contention that "Widus Partners . . . represented in marketing materials that it had a 'presence' and 'office' in San Francisco based on [plaintiff's] employment" in its analysis of specific jurisdiction and correctly concluded these contacts were not jurisdictionally relevant because they were within plaintiff's control. The trial court was

26

not required to state that additional irrelevant evidence would not change its analysis.

Plaintiff's alternative contention that "[d]iscovery of the names of all companies in California with which Widus [Partners] entered into business relationships" and "agreements in which Widus [Partners] agreed to be subject to California jurisdiction . . . plainly relate to the question of specific personal jurisdiction" also lacks merit. Preliminarily, plaintiff did not expressly mention these issues in his opposition to the entity defendants' motion to quash. As summarized in an attorney declaration, the discovery was "aimed at establishing facts relating to Widus Partners' and Widus Holdings' contacts with California, including their use of [certain marketing presentations]," "establishing the fact that [d]efendants ceased stating that they have a 'presence' or 'office' in California at such time as their dispute with plaintiff . . . arose," and "establishing facts supporting alter ego as a basis for personal jurisdiction over Widus Holdings." In any case, such evidence would not support personal jurisdiction for reasons we have already discussed. Plaintiff could not plausibly contend that defendants hired him to secure or perform work related to contracts of which he is not aware, and his claims do not arise out of or relate to contracts to which he was not a party.

## DISPOSITION

The trial court's orders are affirmed. Defendants shall recover their costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

BAKER, J.

I concur:

KIM, J.

28

*Wang v. Byun, B322774*

RUBIN, P. J. – Concurring

I concur in the judgment but write separately for a narrow reason.

I find instructive a case cited in the majority opinion, *King v. Prodea Systems, Inc.* (D.Mass. 2019) 433 F.Supp.3d 7. There, United States District Judge Gorton wrote: "The Corporate Defendants emphasize that they merely acquiesced to King's request to work remotely from Massachusetts for King's benefit. Although that may be true, the Corporate Defendants nonetheless purposefully and intentionally engaged with King in Massachusetts through, among other actions, recruiting him, negotiating his employment contract, withholding state income taxes from his salary and soliciting business with his assistance in Massachusetts on at least two occasions. Such conduct cannot reasonably be described as involuntary or unilateral. See Nowak v. Tak How Invs., Ltd., 94 F.3d 708, 713 (1st Cir. 1996). Consequently, the Corporate Defendants purposefully availed themselves of the privilege of conducting business in Massachusetts." (*King v. Prodea Systems, Inc.*, *supra*, at p. 15.)

Much of Judge Gorton's description is evocative of the evidence before the trial court in the current appeal. But Judge Gorton was making factual findings, much like I might have done if I had been the trial judge here. But I was not and, considering the facts and the inferences from those facts before the trial court in this case, I cannot say that substantial evidence does not support the trial court's ruling. Thus, I concur in the judgment.


RUBIN, P. J.